Daniel T. Smith, Esq. Informal Opinion Town Attorney No. 95-52 Town of Chester Art Tennyson Road Chestertown, N Y 12817
Dear Mr. Smith:
You have asked several questions about the permissible uses of land that you believe the town acquired under the Park and Recreation Land Acquisition Program of 1960. You have forwarded a copy of Resolution #40 of 1962, which indicates that the town purchased the property for use as a recreation area in the expectation that the State would reimburse it for seventy-five percent of the purchase price under the Park and Recreation Bond Program. You inquire whether (1) the town may harvest timber from the land and, if it may, whether there are restrictions on the town's use of the proceeds; (2) the town may lease a small portion of the land to the local Chamber of Commerce and whether the Chamber may place a building and parking lot on the property; (3) an easement across a portion of the property, which was granted to an adjoining landowner without legislative authorization, is valid; and (4) the town may construct a town hall, library and/or health center on the property without the express authorization of an act of the Legislature.
The Parks, Recreation and Historic Preservation Law prescribes the allocation of money received by the State from the sale of bonds under the land acquisition program. § 15.01. The statute lists five categories of land purchases that may be financed with the bond proceeds. Among those are
 (b) For the acquisition of real property for other than state park or municipal park purposes, to provide additional opportunities for outdoor recreation, including public camping, fishing, hunting, boating, winter sports, and, wherever possible, to also serve multiple purposes involving the conservation and development of natural resources, including the preservation of scenic areas, watershed protection, forestry and reforestation, twenty million dollars ($20,000,000.00);
. . .
 (e) For state aid in the amount of seventy-five percent of the cost of acquisition of land for parks by counties, towns and villages, or by improvement districts therein, twenty-one million dollars ($21,000,000.00).
The other provisions, not applicable here, authorize the purchase of land for State and city parks. Id., § 15.01(a), (c), (d). The Office of Parks, Recreation and Historic Preservation has reviewed its records and determined that the park land at issue here was purchased under the provisions of section 15.01(e).
Accordingly, the property is subject to the restriction on alienation set forth in Parks, Recreation and Historic Preservation Law § 15.09, which provides:
 Lands acquired by a municipality with the aid of funds made available pursuant to this article shall be retained by the municipality and shall not be disposed of or, except as provided in Section 15.11, used for other than public park and related purposes without the express authority of an act of the legislature.
The exception set forth in section 15.11 relates to use of land by prior owners and is not relevant to any of the questions you raise.
The plain language of section 15.09 appears to preclude all of the proposed uses discussed in your request unless express authority for the particular use is granted by an act of the Legislature. The broad proscription would bar use of the property even for town purposes that are different from the park use for which the property was purchased with a State subsidy. See, for example, 1965 Op Atty Gen 30, in which we concluded that construction of a public library on lands acquired pursuant to the Parks and Recreation Land Acquisition Act was not a proper use of such lands because a library would not provide outdoor recreation consistent with the purpose of the legislation. Nor can the town permit use of the property by the Chamber of Commerce, other private groups, or the adjoining property owners.
Commercial harvesting of timber, where the basis for selecting trees is solely for economic yield, in our view amounts to using the property for the production of a cash crop, which is not permitted by the statute. We believe commercial timber harvesting is easily distinguishable from the one-time harvest of hay that we concluded would be appropriate in our earlier opinion. 1962 Op Atty Gen (Inf) 250. In that opinion, we concluded that when a county purchased property for park purposes it could sell standing hay or other crops easily removed from the property to avoid waste, but could not continue to cultivate crops there.
Moreover, even if the statutory restrictions on use of property acquired with bond act funding did not apply, there are common law restrictions on the use of public park land. Dedicated park areas in New York are impressed with a public trust and their use for other than park purposes requires the direct and specific approval of the State legislature, plainly conferred. Matter of Ackerman v Steisel, 104 A.D.2d 940, 941 (2d Dept 1984), affd on memorandum below, 66 N.Y.2d 833 (1985). Whether, without a formal dedication, public property has been dedicated to park use is a factual question dependent upon all the circumstances. The purpose for which the property originally was acquired and the extent of public use are relevant. See, Informal Opinion No. 84-15.
We conclude that the proposed uses of land, acquired under the Park and Recreation Land Acquisition Program of 1960 as a municipal park, are prohibited by Parks, Recreation and Historic Preservation Law § 15.09
in the absence of express authorization by the State Legislature.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY
Assistant Attorney General